Rivera, J.P (dissenting).
In this original proceeding pursuant to CPLR article 78 in the nature of a writ of prohibition, the petitioner, an insanity acquittee, seeks to prohibit the enforcement of a provision contained in an amended order of conditions which directed that should he fail to comply with any of the remaining conditions set forth therein “and refuse to appear for or comply with a psychiatric examination,” the Commissioner of the New York State Office of Mental Health “shall apply to the court for a Temporary Confinement Order for the purpose of conducting an effective psychiatric examination in a secure facility” (hereinafter the disputed provision).
The primary issue presented is whether the Supreme Court exceeded its authority in issuing the aforementioned amended order of conditions containing the disputed provision. For the reasons that follow, I conclude that the petitioner has failed to establish that the disputed provision is not authorized. Accordingly, I would deny the petition and dismiss the proceeding.
Factual Background
The petitioner, Robert T., who is currently 64 years old, has a long psychiatric history. His first admission, in September 1974, was for agitated and assaultive behavior at home. He was diagnosed as suffering from psychosis with epilepsy. Thereafter, on a readmission, in October 1983, he was diagnosed with adjustment disorder with depressed mood. In April 1995, while at his residence, he cut his wrists and was admitted to St. Francis Hospital in Poughkeepsie, New York. He was discharged on May 4, 1995.
*185 Approximately two months after the aforementioned discharge from the hospital, on July 16, 1995, the petitioner intentionally drove his car into the opposite lane of traffic, purportedly in an attempt to commit suicide. He collided with another vehicle, killing its occupant. He was charged with manslaughter in the second degree. By order of the County Court, Ulster County, dated March 19, 1996, the petitioner was found not responsible by reason of mental disease or defect and was remanded to the custody of the Commissioner of the New York State Office of Mental Health (hereinafter the Commissioner), pursuant to CPL 330.20, based upon a finding that he was dangerously mentally ill. Thereafter, by order of the Supreme Court, Dutchess County, dated August 1, 2002, the petitioner was released from confinement pursuant to a release order and order of conditions, which imposed a treatment plan effective for five years. Subsequent to the issuance of the above-mentioned order of conditions, by order dated September 24, 2007, the Supreme Court, Dutchess County, extended the order of conditions until September 24, 2010.
In August 2010 the Commissioner moved to extend the order of conditions. As of July 29, 2010, the petitioner’s psychiatric/ clinical diagnosis was set forth, inter alia, as “Axis I” major depressive disorder severe recurrent with psychotic features; and “Axis II” personality disorder “NOS.”
The proposed extended order of conditions contained the following disputed provision:
“ORDERED that should the defendant fail to comply with any of the above conditions and refuse to appear for or comply with a psychiatric examination, the Commissioner shall apply to the court for a Temporary Confinement Order for the purpose of conducting an effective psychiatric examination in a secure facility.”
While the petitioner consented to the continuation of the order of conditions for an additional three years, he objected to the insertion of the disputed provision. In an amended order of conditions dated December 16, 2010, the respondent Christine A. Sproat, a Justice of the Supreme Court, Dutchess County, included the disputed provision. The petitioner is not presently confined and the disputed provision has not been invoked.
The Instant Proceeding Pursuant to CPLR Article 78
The petitioner commenced the instant proceeding pursuant to CPLR article 78 in the nature of a writ of prohibition, to pro *186 hibit the enforcement of the disputed provision. According to the petitioner, Justice Sproat exceeded her authority in issuing the amended order of conditions which contained the disputed provision. In support of this claim, the petitioner relied upon CPL 330.20 (14), which provides:
“At any time during the period covered by an order of conditions an application may be made by the commissioner or the district attorney to the court that issued such order, or to a superior court in the county where the defendant is then residing, for a recommitment order when the applicant is of the view that the defendant has a dangerous mental disorder. The applicant must give written notice of the application to the defendant, counsel for the defendant, and the mental hygiene legal service, and if the applicant is the commissioner he must give such notice to the district attorney or if the applicant is the district attorney he must give such notice to the commissioner. Upon receipt of such application the court must order the defendant to appear before it for a hearing to determine if the defendant has a dangerous mental disorder. ... If the defendant fails to appear in court as directed, the court may issue a warrant to an appropriate peace officer directing him to take the defendant into custody and bring him before the court. In such circumstance, the court may direct that the defendant be confined in an appropriate institution located near the place where the court sits. The court must conduct a hearing to determine whether the defendant has a dangerous mental disorder. At such hearing, the applicant, whether he be the commissioner or the district attorney must establish to the satisfaction of the court that the defendant has a dangerous mental disorder. ... If the court finds that the defendant has a dangerous mental disorder, it must issue a recommitment order.”
The petitioner asserted that CPL 330.20 (14) is the “mechanism by which to effectuate” the “temporary secure confinement” within the context of a pending recommitment application. Thus, he claimed that Justice Sproat improperly exceeded her authority when she authorized a secure confinement outside of what is presently permitted under law, bypassing safeguards and constitutional rights.
*187 In a verified answer, dated June 3, 2011, the respondents entered denials to the allegations of the petition. The respondents asserted that no legal grounds existed for the instant CPLR article 78 proceeding. In this regard, the respondents stated that, contrary to the petitioner’s contention, Justice Sproat did not “act either without jurisdiction or in excess of its authorized powers.” Instead, the respondents maintained that the governing statute “explicitly” conferred “broad discretion” upon Justice Sproat to “fashion reasonable conditions to be included in an Order of Conditions.” Specifically, the respondents contended that the disputed provision was permissible pursuant to CPL 330.20 (1) (o), which defines an order of conditions, in pertinent part, as “an order directing a defendant to comply with [a] prescribed treatment plan, or any other condition which the court determines to be reasonably necessary or appropriate, and, in addition, where a defendant is in custody of the commissioner, not to leave the facility without authorization” (emphasis added).
The respondents also referred to CPL 330.20 (12), which states, in relevant part: “The order of conditions issued in conjunction with a release order shall incorporate a written service plan prepared by a psychiatrist familiar with the defendant’s case history and approved by the court, and shall contain any conditions that the court determines to be reasonably necessary or appropriate” (emphasis added).
While the respondents acknowledged that the alternative to a temporary confinement provision is a “[Recommitment order” pursuant to CPL 330.20 (14), they asserted that the temporary order of confinement was a “less intrusive” means for the court to ensure compliance with the order of conditions.
In reply, the petitioner asserted that the disputed provision was not a “condition” relating to treatment, but rather pertained to the “consequences” that follow “if the treatment plan is not followed.” He insisted that Justice Sproat was “not free to legislate.”
Legal Analysis
Initially, a petitioner seeking a writ of prohibition must demonstrate that a body or officer acting in a judicial or quasi-judicial capacity is proceeding or threatening to proceed in excess of its jurisdiction, and that the petitioner has a clear legal right to the relief requested (see Matter of Garner v New York State Dept. of Correctional Servs., 10 NY3d 358, 361-362 *188 [2008]). “[S]uch relief is ‘extraordinary’ and should only be granted in limited circumstances” (id. at 361; see Matter of Nicholson v State Commn. on Jud. Conduct, 50 NY2d 597, 605 [1980]). The petitioner herein has failed to make the required showing.
CPL 330.20, which was enacted in 1980, governs the procedure to be followed after a criminal court has entered a judgment that the defendant is not responsible by reason of mental disease or defect (see Matter of Jamie R. v Consilvio, 6 NY3d 138, 141 [2006]). If a person charged with a crime is found, by acceptance of a plea or by verdict, to be not responsible by reason of mental disease or defect, the court orders a psychiatric examination and conducts an initial hearing to determine whether the person is mentally ill or is suffering from a dangerous mental disorder (see CPL 330.20 [2], [3], [4]).
Based upon evidence at the initial hearing, the individual receives one of three classifications. Where the court finds that the individual has a dangerous mental disorder, he or she is classified in track one (see 1981 Rep of Law Rev Commn, 1981 McKinney’s Session Laws of NY at 2265), and is committed to a secure facility for an initial term of six months (see CPL 330.20 [1] [f]; [6]). At the expiration of a six-month commitment order to a secure facility, the track one patient receives the first of a series of court reviews to determine his or her current mental condition. If the court finds that the individual continues to have a dangerous mental disorder, he or she must be recommitted under a first retention order for not more than one year (see CPL 330.20 [1] [g]; [8]), but second and subsequent reviews occur every two years (see CPL 330.20 [1] [h]; [9]). If a court finds that the individual no longer suffers from a dangerous mental disorder, it may direct transfer to a nonsecure facility with an order of conditions if the individual is still mentally ill, or release the individual with an order of conditions if the individual is no longer mentally ill (see CPL 330.20 [11], [12]).
Alternatively, where the court, in its initial determination, finds that the individual is mentally ill but does not have a dangerous mental disorder, he or she is classified in track two and committed to the custody of the Commissioner pursuant to the Mental Hygiene Law, with an order of conditions (see CPL 330.20 [7]), or where the court finds that the individual does not have a dangerous mental disorder and is not mentally ill, he or she is classified in track three and is discharged either “unconditionally or subject to an order of conditions” (id.; see *189 Matter of Sheldon S., 9 AD3d 92, 96 [2004]; Matter of David B., 97 NY2d 267, 276 [2002]). Accordingly, an order of conditions must be imposed on track one and two persons, and may be imposed on track three persons (see Matter of Sheldon S., 9 AD3d at 96).
The petitioner at issue was classified in a track one status, since the court initially found that he was suffering from dangerous mental disorders. Further, his status as a track one patient does not change if he is later determined to be “mentally ill” but no longer suffering from the dangerous mental disorders (see Matter of Norman D., 3 NY3d 150, 152 [2004]). “Track status, as determined by the initial commitment order, governs the acquittee’s level of supervision in future proceedings and may be overturned only on appeal from that order, not by means of a rehearing and review” (id.).
As noted by the Court of Appeals in Matter of Jill ZZ. (83 NY2d 133, 138 [1994]), “the order of conditions is the vehicle” whereby the court “effectuates its continuing supervisory authority over” a person acquitted by reason of mental disease or defect. “Should a defendant fail to comply with the treatment plan specified in the order of conditions and thereafter become dangerous to himself or others, the courts may, upon a hearing, recommit the defendant to a secure psychiatric hospital” (Matter of Oswald N., 87 NY2d 98, 102 [1995]). At any time during the period covered by an order of conditions, the Commissioner or the District Attorney may apply for recommitment, if the “applicant is of the view that the defendant has a dangerous mental disorder” (CPL 330.20 [14]). The purposes of the recommitment procedures are “to ensure that all persons who develop or relapse into a dangerous mental disorder during the pendency of the order of conditions are amenable to a secure psychiatric placement” (People v Stone, 73 NY2d 296, 303 [1989]; see Matter of Sheldon S., 9 AD3d at 97).
The Court of Appeals has held that “[t]he retention, conditional release or discharge of a track one patient is governed entirely by CPL 330.20” (Matter of Jamie R. v Consilvio, 6 NY3d at 143). Since the petitioner is a track one patient, the terms relating to his supervision are governed solely by CPL 330.20. Thus, the crucial issue presented is whether the disputed provision is authorized by CPL 330.20.
There is nothing in the express language of CPL 330.20 that prohibits or limits the court’s authority to entertain an application for a temporary confinement order such as the one at bar. *190 To the contrary, as persuasively maintained by the respondents, CPL 330.20 (1) (o) permits a court to direct “any other condition which the court determines to be reasonably necessary or appropriate.” Further, the statute states that an order of conditions “shall contain any conditions that the court determines to be reasonably necessary or appropriate” (CPL 330.20 [12]). Inasmuch as each case is unique and not all conditions can properly be cookie cut or anticipated, the legislature saw fit to draft the statute in very broad terms so as to allow a court to properly devise “reasonably necessary or appropriate” conditions.
As succinctly stated by the Court of Appeals in Matter of Oswald N. (87 NY2d at 104),
“[t]he postacquittal procedures now codified in CPL 330.20 and initially enacted into law as part of the Insanity Defense Reform Act of 1980 (L 1980, ch 548) were intended to protect the public from persons found not responsible of a crime by reason of mental disease or defect while providing effective treatment for such individuals.”
Quoting from the Law Revision Commission which proposed the legislation largely incorporated in CPL 330.20, the Court of Appeals added that since
“ ‘psychiatry cannot now guarantee the safety of the public from future dangerous acts of persons found not responsible . . . and will most likely be unable to do so in the foreseeable future, the procedures governing commitment, treatment, and release of such defendants are critically important. . . . [T]he mental condition of the defendant when released into the community—is the basis of public and professional concern’ ” (id., quoting 1981 Rep of Law Rev Commn, 1981 McKinney’s Session Laws of NY at 2261).
It is self-evident that the legislature set forth certain procedures for an application for a “recommitment order” (CPL 330.20 [14]). However, a “recommitment order” is not the exclusive tool available to the court under the statute. The temporary confinement order which includes the disputed provision constitutes an alternative means, separate from and short of a full recommitment order application process. The majority appears to conflate two entirely different concepts. CPL 330.20 (14) is the proper mechanism by which to proceed where “the *191 applicant is of the view that the [petitioner] has a dangerous mental disorder.” That provision is different from the disputed provision. Within the construct of mental illness, the disputed provision provides a preventive and preemptive mechanism. One of the objectives of the disputed provision and the order of conditions itself is to provide a tool for monitoring a potential onset of symptomatology, anticipatory to a likely regression or decompensation. The disputed provision constitutes a safety net within the statutory framework. It is simply another means to avert an insanity acquitee’s potential degeneration or devolution into a “dangerous mental disorder.”
In order for the disputed provision to be invoked, two conditions must be met, namely, (1) the failure by the petitioner to comply with any of the conditions set forth in the amended order of conditions, i.e., treatment, and (2) the refusal by the petitioner to appear for or comply with a psychiatric examination. Upon a showing of noncompliance by the petitioner with those two conditions, the court may issue a “Temporary Confinement Order” for the very limited purpose of conducting an “effective psychiatric examination in a secure facility.” Clearly, this temporary and substantially less intrusive measure sought for a very limited purpose, namely, to permit an application for conducting a psychiatric examination, cannot be said to be prohibited by the statute. The procedure that the provision facilitates constitutes an efficient means, consistent with the legislative intent and judicial authority, to balance the State’s interest in protecting society with the petitioner’s rights and civil liberties. The disputed provision is, in fact, consistent with the legislative intent and mandate upon the judiciary to supervise an insanity acquittee.
Under the well-established principles of judicial construction of statutes, courts should take statutes “as they find them and construe them according to the canons of interpretation, neither extending their operation beyond the bounds of the legislative intent, nor restricting their obvious application” (McKinney’s Cons Laws of NY, Book 1, Statutes § 73, Comment). Neither the language nor the intention of CPL 330.20 supports the petitioner’s arguments. Consequently, I will not circumscribe the Supreme Court’s authority where, as here, the legislature has expressly permitted it to issue conditions which it determines to be “reasonably necessary or appropriate.” The petitioner’s contentions are counterintuitive, and the determination sought by the petitioner severely undermines the court’s *192 authority to carry out its mandate in exercising continuing supervision over an insanity acquittee.
Further, I reject the petitioner’s argument that the disputed provision violates his constitutional rights (see Jones v United States, 463 US 354, 370 [1983]). It cannot be said that the petitioner’s liberty interests have been or will be violated by the disputed provision. The disputed provision is not a self-executing order. The petitioner is not forcibly subjected to a coercive psychiatric examination, to an invasive medical procedure, or to confinement without due process or equal protection. The disputed provision simply permits the Commissioner to apply to the court for a temporary confinement order for the purpose of conducting a psychiatric examination. The court, which is ultimately responsible for maintaining ongoing judicial supervision over an acquittee’s treatment, must then determine whether it is appropriate to grant or deny the application.
Finally, I disagree with my colleagues’ assertion that the disputed provision establishes an ex parte enforcement procedure for addressing violations of the order of conditions. The disputed provision provides the petitioner with ample notice and warning of what is expected of him, and of the consequences that may result should he fail to comply with the listed conditions and refuse to submit to a psychiatric examination.
Accordingly, I would deny the petition and dismiss the proceeding.
Florio and Sgroi, JJ., concur with Austin, J.; Rivera, J.E, dissents in a separate opinion.
Adjudged that the petition is granted, on the law, without costs or disbursements, and the respondents are prohibited from enforcing or taking action to enforce the provision of the amended order of conditions dated December 16, 2010, which directed that should the petitioner fail to comply with any of the other conditions imposed in that order “and refuse to appear for or comply with a psychiatric examination,” the Commissioner of the New York State Office of Mental Health “shall apply to the court for a Temporary Confinement Order for the purpose of conducting an effective psychiatric examination in a secure facility.”